**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANINE R. JONES, | ) No. CV 13-1213-AS |
| | ) |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PROCEEDINGS**

    On July 19, 2013, Plaintiff filed a Complaint, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), alleging that the Social Security Administration erred in denying her disability benefits. (Docket Entry No. 3.) On October 18, 2013, Defendant filed an Answer to the Complaint and the Certified Administrative Record ("A.R."). (Docket Entry No. 22.) The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 14, 15.) On November 18, 2013, Plaintiff filed a Brief in support of her Complaint ("Pl.'s

Br."). (Docket Entry No. 24.) On December 2, 2013, Defendant filed a Brief in support of its Answer ("Def.'s Br."). On December 7, 2013, Plaintiff filed a Notice of Non-Opposition, stating that she did not intend to file a reply to Defendant's Brief. The Court has taken the action under submission without oral argument. <u>See</u> C.D. Local R. 7—15; "Order re Procedures in Social Security Case."

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

"Social Security disability benefits claimants have the burden of proving disability." <u>Bellamy v. Sec'y Health & Human Serv.</u>, 755 F.3d 1380, 1380 (9th Cir. 1985). A claimant is disabled if he has the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment...which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to determine whether a claimant is disabled, the Administrative Law Judge ("ALJ") follows a five-step process set forth in 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proving steps one through four." <u>Parra v. Astrue</u>, 481 F.3d 742, 746 (9th Cir. 2007).

At step one, the ALJ must determine whether or not the claimant is actually engaged in any "substantial gainful activity," as defined by 20 C.F.R. § 404.1572. If claimant is not so engaged, the evaluation continues to step two. <u>See</u> 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the ALJ determines whether the claimed physical or mental impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). When determining severity, "the ALJ must consider the combined effect of all of the claimant's impairments on [his or] her ability to function, without regard to whether each alone was sufficiently severe." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing 42 U.S.C § 423(d)(2)(B)). Impairments are considered severe unless the evidence "establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" Id. at 1290 (quoting Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)). "[I]f the ALJ concludes that the claimant does have a medically severe impairment, the ALJ proceeds to the next step in the sequence." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005); See 20 C.F.R. § 404.1520(a)(4)(ii).

At step three, the ALJ considers whether the claimant's severe impairments are disabling. 20 C.F.R. § 404.1520(a)(4)(iii). The claimant is considered disabled if his purported conditions meet or are medically equivalent to a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "[An] impairment is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. 404.1526. "Medical equivalence must be based on medical findings[]" rather than "[a] generalized assertion" or opinion testimony regarding "functional problems." Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999) (citing 20 C.F.R. § 404.1526).

If the ALJ concludes that the claimant is not disabled at step three, the ALJ moves to step four and considers whether the claimant can return to his past relevant work. Burch, 400 F.3d at 679; See 20 C.F.R. § 404.1520(a)(4)(iv). In order to do so, the ALJ determines claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv). A claimant's RFC is "what [claimant] can still do despite [claimant's] limitations," and is "based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. 416.945(a)(1). If the claimant's RFC dictates that he can return to his past relevant work, he is not considered disabled. Burch, 400 F.3d at 679.

If the claimant proves in step four that he cannot return to his past relevant work, the ALJ proceeds to step five. 20 C.F.R. § 404.1520(a)(4)(v). At step five "the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work." Embrey v. Bowden, 849 F.2d 418, 422 (9th Cir. 1988). At this point, ALJs "can call upon a vocational expert to testify as to: (1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy." Tackett, 180 F.3d at 1101. If the claimant does not have the RFC to work in any available jobs, he is considered disabled. 20 C.F.R. § 404.1520(a)(4)(v).

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff Janine R. Jones ("Plaintiff"), a former hairdresser, asserts disability beginning June 19, 2008, based on the following

4

alleged physical and mental impairments: anxiety and pain in both arms. (A.R. 147.) The ALJ examined the record and heard testimony from Plaintiff at the hearing on January 31, 2012. (A.R. 45–47.) Plaintiff testified that she suffers from pain in her left back, neck, shoulders, left arm, and left knee. (A.R. 45–47.)

The ALJ applied the five-step evaluation process to determine whether Plaintiff was disabled. (A.R. 12-13.) At step one, the ALJ determined that Plaintiff was not engaged in any "substantially gainful activity." (A.R. 13.)

At step two, the ALJ found that Plaintiff suffers from the following medically determinable impairments: obesity and degenerative joint disease of the cervical spine with neuropathy. (Id.) The ALJ concluded that Plaintiff's medically determinable impairments of depression and anxiety were nonsevere because they did not cause more than minimal limitations in her ability to perform basic work activities. (A.R. 14.)

At step three, the ALJ determined that Plaintiff's severe impairments did not meet or equal a medical listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. 14.)

Before proceeding to step four, the ALJ found that Plaintiff had the RFC to perform light work with the following limitations:

>        occasionally climb ramps/stairs, stoop, kneel, balance,
>        crouch, and crawl; no climbing ladders, ropes, or
>        scaffolds; frequent handling and fingering; avoid

concentrated exposure to hazardous heights and dangerous machinery; frequent overhead reaching and reaching in front; able to understand, remember, and carry out detailed tasks; no limitation interacting with the public, coworkers, and supervisors; avoid concentrated exposure to cold and heat; frequent near and far visual acuity; and frequent accommodation visually.

(A.R. 15.)   The ALJ based the RFC finding in part on the opinion of medical expert Samuel Landau, M.D. ("Dr. Landau"), who reviewed Plaintiff's medical records and testified at the hearing as a medical expert.   (A.R. 23.)   Dr. Landau opined that Plaintiff was morbidly obese, had degenerative disc disease and arthritis of the neck, possible carpal tunnel syndrome in the upper extremities, and peripheral neuropathy.   (A.R. 33.)   Dr. Landau noted that the medical records did not prove carpal tunnel, but it was a possible diagnosis. (A.R. 33.)   Additionally, Dr. Landau found that although Plaintiff tested positive for an antinuclear antibody test (ANA), she did not fulfill the criteria for a lupus diagnosis.   (A.R. 34.)

Upon review of the record, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.   (A.R. 15.)   However, the ALJ also found that Plaintiff's statements "concerning the intensity, persistence, and limiting effects of these symptoms" were not credible.   (A.R. 15.)

At step four, the ALJ determined that Plaintiff was able to perform her past relevant work as a cosmetologist.   (A.R. 18.)   The ALJ made this determination after comparing Plaintiff's RFC with the

requirements of her past relevant work, and hearing testimony from a vocational expert.  (A.R. 18.)

Alternatively, the ALJ found that, in addition to her past relevant work, Plaintiff was also able to perform other jobs existing in significant numbers in the national economy, such as an "electronic worker," a "ticket taker," or a "packing machine operator."  (A.R. 19.)

Accordingly, the ALJ found that Plaintiff was not disabled under 42 U.S.C. § 423(d)(1)(A).  (Id.)

## STANDARD OF REVIEW

This court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used proper legal standards. Smolen, 80 F.3d at 1279.  "Substantial evidence is more than a scintilla, but less than a preponderance." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  To determine whether substantial evidence supports a finding, "a court must consider [] the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  As a result, "[i]f evidence can reasonably support either affirming or reversing the ALJ's conclusion, [a] court may not substitute its judgment for that of the ALJ." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004).

**PLAINTIFF'S CONTENTIONS**

Plaintiff contends that the ALJ: (1) erred in rejecting carpal tunnel syndrome as a severe impairment in step two; (2) improperly rejected the medical expert's testimony in her assessment of Plaintiff's RFC; (3) erred in her assessment of Plaintiff's credibility; and (4) erred in relying on the VE's testimony because it purportedly conflicts with the Dictionary of Occupational Titles. (Pl.'s Br. 1—10.)

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material[1] legal error.

**A.   Any Err in the ALJ's Finding at Step Two Was Harmless**

Plaintiff asserts that the ALJ erred at step two in finding Plaintiff to have severe impairments only of obesity and degenerative joint disease of the cervical spine with neuropathy.  (Pl.'s Br. 3.)

---

[1]   The harmless error rule applies to the review of administrative decisions regarding disability.  See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision will not be reversed for errors that are harmless).

Plaintiff maintains that she also has an additional severe impairment of bilateral carpal tunnel syndrome.[2]  (Id.)

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities.  See Bowen v. Yuckert, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  Smolen, 80 F.3d at 1290 (quoting Social Security Ruling (SSR) 85-28).  "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims."  Id. (citing Bowen, 482 U.S. at 153-54).  Step two findings must be based upon medical evidence.  20 C.F.R. §§ 404.1509(a)(ii); 416.920(a)(ii).  A claimant's own statement of symptoms alone is not enough to establish a medically determinable impairment.  See 20 C.F.R. §§ 404.1508, 416.908.

The Ninth Circuit has held that when the ALJ has resolved Step Two in a claimant's favor, any error in designating specific impairments as severe does not prejudice a claimant.  Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (concluding that any error committed by the ALJ in step two was harmless because the step

---

[2]   Plaintiff also asserts that she suffers from degenerative joint disease of the lumbar spine. (Pl.'s Br. 3.) However, because Plaintiff does not cite any medical evidence in support of this alleged impairment, the Court declines to consider it.

was resolved in Plaintiff's favor); <u>Rilling v. Astrue</u>, No. CV 10-4601 JCG, 2011 WL 1630771, at *5 (C.D. Cal. Apr. 29, 2011). Because the ALJ found that Plaintiff had severe impairments, including obesity and degenerative joint disease of the cervical spine with neuropathy, the Court concludes that any error by the ALJ in failing to identify as severe Plaintiff's alleged impairment of carpal tunnel syndrome is harmless.

**B.    The ALJ's Assessment of Plaintiff's RFC is Supported By Substantial Evidence**

Plaintiff contends that the ALJ's assessment of Plaintiff's RFC was not supported by substantial evidence. (Pl.'s Br. 5.) In particular, Plaintiff alleges that the ALJ improperly rejected the medical expert's testimony that Plaintiff could engage in "no forceful gripping, grasping, or twisting," and that Plaintiff would be limited to standing and walking to only 2 hours out of 8. (Pl.'s Br. 5.)

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining or reviewing physicians). <u>See</u> 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; <u>see also</u> <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians

10

are employed to cure and therefore have a greater opportunity to know and observe the claimant.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen, 80 F.3d at 1285.

When a treating or examining doctor's opinion is not contradicted by some evidence in the record, it may be rejected only for "clear and convincing reasons."  See Carmickle v. Commissioner, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81 F.3d at 830-31).  Where, as here, a treating physician's opinion is controverted by other evidence, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to properly reject it. Lester, 81 F.3d at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)); see also Orn, 495 F.3d at 632-33; Soc. Sec. Ruling 96-2p.

Plaintiff saw treating physician, Dr. M. Ahluwalia, from 2006 to 2009 for generalized pain.  (A.R. 36.)  Dr. Ahluwalia referred Plaintiff to Dr. Purnima Thakran for a neurology consult.  (A.R. 272.)  On March 2, 2010, Dr. Thakran conducted an electrodiagnostic study of Plaintiff's upper extremities, which revealed the following diagnoses: cervical radiculopathy affecting the left C7 nerve root, bilateral carpal tunnel syndrome, and underlying distal polyneuropathy.  (A.R. 275–78.)  At the hearing, the ALJ asked medical expert Dr. Landau to testify about Plaintiff's medical records.  See 20 C.F.R. §§ 404.1527(e) (ALJ "may also ask for and consider opinions from medical experts on the nature and severity of your impairment(s)").  According to Dr. Landau, Plaintiff's functional limitations included "no forceful gripping, grasping, or

twisting," and based this finding on the electrodiagnostic study. (A.R. 35, 39.)

Plaintiff contends that the limitation "no forceful gripping, grasping, or twisting" should have been included in Plaintiff's RFC. (Pl. Br. 5.) However, Dr. Landau testified that an electrodiagnostic study alone would not justify the diagnosis because, "[a]n electrodiagnostic study does not establish a diagnosis of carpal tunnel syndrome where there is positive and negative . . . people can have carpal tunnel syndrome and have a relatively normal electrodiagnostic study and vice versa." (A.R. 39.) Accordingly, the ALJ explained that Dr. Landau's residual functional capacity assessment was too restrictive with respect to Plaintiff's manipulative limitations because Plaintiff only had possible carpal tunnel syndrome.  This opinion was also supported by the agency's medical consultant, Dr. Keith Wahl, who did not consider carpal tunnel syndrome to be a severe medically determinable impairment. (A.R. 245—49; 316—18.)

The ALJ also rejected Dr. Landau's testimony that Plaintiff's functional limitations should include a restriction to standing and walking only 2 hours out of 8.  (Pl.'s Br. 5—6.)  The ALJ rejected this testimony because Plaintiff underwent two recent physical examinations in January 2012 which produced normal results.  (A.R. 16.)  Plaintiff visited Dr. Bikramjit Ahluwalia on January 3, 2012 and Dr. Mohinder Ahuwalia on January 24, 2012.  (A.R. 391—92; 420—21.)  Although Plaintiff complained of pain in her neck and shoulder, and numbness in her left toe, the ALJ pointed out that nothing in the

record indicated Plaintiff's need for a back brace or cane.  (A.R. 17.)

Accordingly, the ALJ provided "specific and legitimate" reasons supported by substantial evidence for rejecting the expert's testimony regarding Plaintiff's functional limitations.  Lester, 81 F.3d at 830-31.

**C.  The ALJ Provided Clear and Convincing Reasons for Discounting Plaintiff's Credibility**

Plaintiff also contends that the ALJ failed to consider her subjective complaints and properly assess her credibility.  (Pl.'s Br. 8.)  In particular, Plaintiff claims that the ALJ rejected Plaintiff's credibility only on the basis that her complaints lacked objective medical evidence.

An ALJ's assessment of a claimant's credibility and the severity of his or her symptoms is entitled to "great weight."  See Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).  "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis.  Lingenfelter v. Astrue,

504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (internal quotations and citation omitted). If such objective medical evidence exists, the ALJ may not reject the claimant's testimony "simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." Smolen, 80 F.3d at 1282 (emphasis in original). Instead, in finding the claimant's subjective complaints not credible, the ALJ must make "specific, cogent" findings that support the conclusion. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (quoting Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990)). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.3d at 834.

Objective Medical Evidence

While a claimant's testimony regarding her symptoms "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1592(c)(2)); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

In addition to relying on the medical expert's testimony (*e.g.*, regarding the electrodiagnostic study which did not prove carpal tunnel syndrome), the ALJ considered Plaintiff's consultative exam with Dr. Bryan To in connection with a previous application for social security benefits.  During this consult, a back examination revealed no true findings of nerve root irritation, negative straight leg raise in the supine and sitting positions bilaterally, and painful, but normal range of motion.  (A.R. 15; 199.)  Moreover, in regard to Plaintiff's joint pain, Dr. To found no evidence of deformity, swelling, or tenderness of the joints, and normal range of motion.  (A.R. 15—16; 199.)  Accordingly, Dr. To found Plaintiff was only limited to medium work.  (A.R. 199—200.)

Moreover, although Plaintiff reported the need for a back brace and cane, the ALJ concluded that the objective evidence did not support the need for either assistive device.  Plaintiff's MRI exam from March 2010 showed degenerative disk and joint disease, which caused only mild central canal stenosis and no significant spinal cord or root compression.  (A.R. 16; 302—304.)  On May 11, 2010, Dr. Ali Mesiwala performed a surgical consultation and concluded that surgery was unnecessary.  (A.R. 16; 300.)  Plaintiff attended physical therapy, and testified at the hearing that she takes vicodin for pain.  (A.R. 43, 286—296.)  However, Plaintiff has not pointed to evidence in the record documenting who prescribed Vicodin, for how long, or the indications for prescribing those medications.  See Higinio v. Colvin, No. EDCV 12-1820 AJW, 2014 WL 47935, at *5 (C.D. Cal. Jan. 7, 2014) (treatment as a whole was conservative despite claimant's use of narcotic pain medications).

<u>Daily Activities</u>

The ALJ also relied in part on Plaintiff's activities of daily living in finding that Plaintiff's testimony lacked credibility.

A claimant's ability to perform a range of daily activities can be used to assess his credibility.  <u>See</u> 20 C.F.R. §§ 404.1529(a), 416.929(a); <u>Molina v. Astrue</u>, 674 F.3d 1104, 1113 (9th Cir. 2012) ("[T]he ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferrable to a work setting.").  However, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."  <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001).  Instead, the relevant inquiry is whether the skills involved in the daily activities could be transferred to the workplace.  <u>See</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ pointed out that Plaintiff worked part time "as recently as November 2010." (A.R. 16.)  Plaintiff testified that for several months out of the year, she worked five to six days a week as a hairdresser, doing braids that required on average eight to nine hours of work.  (A.R. 61.)  On her days off, Plaintiff would take care of other business and check on her daughter in school.  (A.R. 61.)  Although this work did not equate to substantial gainful activity, the ALJ properly relied on it to show that the Plaintiff

was engaging in activity inconsistent with her alleged disability. See Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); see also Helton v. Colvin, No. C13-382-RAJ, 2013 WL 6159313, at *11 (W.D. Wash. Nov. 25, 2013) (finding that the ALJ reasonably concluded plaintiff's recent work as a call center employee undercut her claims regarding the severity of her impairments and their impact on her ability to work).

Accordingly, the ALJ permissibly evaluated Plaintiff's credibility, taking into account the lack of corroborating medical evidence and Plaintiff's daily activities. The Court finds that the ALJ has stated "clear and convincing" reasons for discounting Plaintiff's credibility.

### D. **The ALJ Permissibly Relied on Vocational Expert Testimony**

The ALJ called Troy Scott to testify as a vocational expert. (A.R. 62.) The ALJ then posed a series of hypothetical questions to the VE to determine whether a person with Plaintiff's limitations could perform her past relevant work as a cosmetologist (Step Four) or alternative work available in the economy (Step Five). (A.R. 62–71.)

The first hypothetical contained the following limitations at the light exertional level:

> occasional climbing ramps and stairs, stooping, kneeling, balancing, crouching, and crawling but no climbing ladders, ropes or scaffolds; frequent handling and fingering;

17

> avoidance of concentrated exposure to hazardous heights and
> dangerous machinery; frequent overhead reaching and
> reaching in front; able to understand, remember, and carry
> out detailed tasks; no limitations in interacting with the
> public, co-workers, or supervisors; avoidance of
> concentrated exposure to cold and heat; frequent near and
> far visual acuity; and frequent accommodation visually.

(A.R. 63.) The VE testified that a hypothetical person with these limitations could not only perform the past work as a cosmetologist, but various jobs available in the national economy, including electronics worker, ticket taker, and packing machine operator. (A.R. 64—65.)

The ALJ based his second hypothetical on the medical expert, Dr. Landau's testimony. The second hypothetical included the following limitations:

> able to stand and/or walk up to two hours in an eight-hour
> work day; sit with no limitations; lift and carry 10 pounds
> frequently and 20 pounds occasionally; occasionally stoop
> and bend; able to climb stairs but cannot climb ladders,
> work at heights, or balance; cannot do forceful grasping,
> gripping, or twisting; frequent fine manipulation, such as
> keyboarding, and gross manipulation, such as opening
> drawers and carrying folders; can't work above shoulder
> level on the left side but no limitations on the right;
> can't squat, kneel, crouch, crawl, or jump . . .
> occasionally operate foot pedals and controls. And also
> cannot operate motor vehicles, be responsible for the
> safety of others, work around heights or around dangerous
> machinery and is limited to simple, repetitive tasks.

(A.R. 64—65.) The VE testified that a hypothetical person with these further limitations would not be able to perform the past work of the Plaintiff as a cosmetologist. (A.R. 65.) However, the VE also

18

testified that the occupations available in the national economy for the first hypothetical would also apply to the second hypothetical. (A.R. 65.)   The ALJ specifically asked the VE whether these jobs would still apply with the standing and walking limitation of 2 hours out of 8.   (A.R. 65—66.)   The VE responded in the affirmative, although eroded approximately 50% of the parking machine operator positions, which would not be available with that standing/walking limitation.  (A.R. 66.)

Plaintiff contends that there is a DOT inconsistency in the ALJ's finding that Plaintiff can perform the occupations of electronics worker, ticket taker, and packing machine operator. (Pl.'s Br. 9.)   In particular, Plaintiff maintains that the "testimony on the part of the vocational expert is directly inconsistent with the Dictionary of Occupational Titles which lists these occupations as light occupations contemplating the ability to stand and/or walk up to 6 hours out of an 8 hour work day." (Pl.'s Br. 9.)

Plaintiff's contention lacks merit because no material conflict exists between the vocational expert's testimony and the job requirements in the DOT.   The DOT classifies the jobs of electronics worker, ticket taker, and packing machine operator as light work. "The *full range* of light work requires standing and walking, off and on, for a total of approximately 6 hours of an 8-hour workday."   20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 83-10, 1983 WL 31251, at *6 (emphasis added).   The DOT does not require six hours of standing and/or walking for *all* jobs classified as light work, it merely

describes the activities that would be required of a person that is able to perform the *full range* of light work.  The ALJ in this case found that Plaintiff's limitations, including the standing and walking limitations, did not allow her to perform the full range of light work.  (A.R. 14—15; see also Boster v. Comm'r, Soc. Sec. Admin., No. CV 07-30-E-LMB, 2008 WL 754275, at *4 (D. Idaho Mar. 19, 2008) ("[T]here will be instances where a claimant's residual functional capacity will not fit precisely within one of the exertional categories of work.") (citation omitted).)

"The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings.  A [vocational expert] . . . may be able to provide more specific information about jobs or occupations than the DOT."  SSR 00-4P, 2000 WL 1898704, at *3.  The VE did not base her testimony on a hypothetical individual that was capable of performing the full range of light work.  On the contrary, the expert considered the additional standing/walking limitations provided in the second hypothetical, and eroded the number of jobs available to an individual with those limitations.  (A.R. 65—66.)

Moreover, the ALJ asked the VE whether the jobs were consistent with the DOT, and the VE answered in the affirmative.  (A.R. 67.) Thus, the ALJ properly relied on the VE's testimony because the hypothetical presented to the VE considered all of the claimant's limitations that were supported by the record.  See Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (considering VE testimony reliable if the hypothetical posed includes all of claimant's

functional limitations); <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony.").


**ORDER**


For all of the foregoing reasons, this Court affirms the decision of the Administrative Law Judge.


LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: April 1, 2015.



_____/s/_____
                 ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.